**Raymundo JAIME, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–01–00195–CR.**

Court of Appeals of Texas,
El Paso.

Aug. 1, 2002.

Rehearing Overruled Aug. 28, 2002.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for Appellee.

Before Panel No. 1, LARSEN, McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Appellant Raymundo Jaime was indicted for aggravated assault while he was on probation for the offense of driving while intoxicated (subsequent). The State sought to revoke probation, alleging Appellant had committed an aggravated assault and had violated various conditions of his probation. After the trial court denied the motion to revoke, Appellant sought pretrial habeas relief with regard to the aggravated assault, contending that collateral estoppel barred his prosecution. This appeal stems from the trial court's denial of his pretrial writ of habeas corpus. We reverse.

## FACTUAL SUMMARY

Raymundo Jaime was convicted of the offense of driving while intoxicated (subsequent) in September 1999. He was placed on ten years' probation under certain terms and conditions. On January 18, 2001, he was charged by indictment with an aggravated assault that purportedly occurred on December 13, 2000. The indictment alleged that Appellant:

> [D]id then and there intentionally and knowingly threaten YOLANDA CAR-PIO with imminent bodily injury and did

then and there use and exhibit a deadly weapon during the commission of said assault, to-wit: a motor vehicle, that in the manner of its use and intended use was capable of causing death and serious bodily injury, [a]nd it is further presented that the said Defendant used and exhibited a deadly weapon, to-wit: a motor vehicle, during the commission of and immediate flight from said offense. . . .

On February 15, 2001, the State filed a motion to revoke probation alleging that Appellant violated several conditions of his community supervision, including committing the assault, violating curfew restrictions, failing to fulfill his community service requirements between May 2000 and January 2001, and operating a motor vehicle that was not equipped with a device that uses a deep-lung breathing analysis mechanism.

At the revocation hearing, the trial judge asked Appellant if he operated a motor vehicle in violation of his terms of probation. Appellant responded that he did not.[1] Officer Sergio Martinez of the El Paso Police Department testified that he was on duty December 13, 2000 when he was dispatched to a call regarding an ag-gravated assault involving a motor vehicle. When Officer Martinez arrived at the scene, the complainant told him that as she drove on Interstate 10, Appellant approached from behind in his vehicle and hit her vehicle several times. The officer obtained the complainant's statement, went to look for Appellant at his apartment complex, but was unable to locate him. As defense counsel began cross-examination of the officer, the trial judge denied the State's motion to revoke.[2]

Thereafter, Appellant filed a joint writ of habeas corpus and motion to dismiss indictment, contending that the issue of his operating a motor vehicle on December 13, 2000 was litigated in the revocation hearing. Because the State presented no evidence, Appellant argued that the doctrine of collateral estoppel prohibits the State from further litigating the issue of whether Appellant was operating a motor vehicle.

The State responded that the court had not made a final determination that the factual allegation was "not true" and because the trial court could deny the motion to revoke without making a decision on the particular factual allegation, there was a basis to proceed with the aggravated assault. The State also claimed to have

---

1. The exchange at the hearing took place as follows:

> THE COURT: Mr. Jaime, you've received a copy of the motion to revoke, and the motion to revoke says that you were placed on DWI probation back in September of '99. DWI subsequent, given ten years probation. Among the terms were you would not operate a motor vehicle. Thereafter, you operated a motor vehicle; is that right?
>
> DEFENDANT: No, sir.
>
> THE COURT: You did not operate a motor vehicle?
>
> DEFENDANT: No, sir.

2. Following the State's direct examination of Officer Martinez, cross-examination by defense counsel took place as follows:

> Q. What apartment did you go to?
>
> THE COURT: Excuse me.
>
> MR. STORCH: Sir?
>
> THE COURT: You don't need anything. I mean, this is regular probation so he's—he did not make contact.
>
> MR. STORCH: I don't know that [he] went to the correct apartment, Your Honor.
>
> THE COURT: That's right. And he—but he doesn't recall where he went, any which way. Go ahead and ask the question.
>
> MR. STORCH: I mean—
>
> THE COURT: You already won the case.
>
> MR. STORCH: Okay. No questions, then. He, he—he hasn't proved anything.
>
> THE COURT: Exactly true. Okay? Motion to revoke denied.
>
> MS. FLYNN: Thank you, Your Honor.

abandoned the allegation with regard to the aggravated assault before it went on the record[3] in the revocation hearing and insisted it was only moving forward at the hearing on the curfew violation and on the community service hours violation. The State further claimed that an off-the-record discussion about why it would not proceed with the motion to revoke followed the court's oral decision.[4]

The trial court issued the following written order:

> The Court FINDS the allegation that the defendant was driving a motor vehicle on or about December 13, 2000, was litigated in the revocation of probation hearing on February 23, 2001, in Cause 990D03645. No evidence of the defendant driving a motor vehicle was presented. The Court made no specific finding on the issue, but the motion to revoke was DENIED. After consideration of the evidence and argument of counsel, it is the ORDER of this Court that the defendant's Writ of Habeas Corpus, Motion to Dismiss Indictment is DENIED.

In his sole point of error, Appellant contends that because the State failed to prove at the probation revocation hearing that he drove a motor vehicle on December 13, 2000, collateral estoppel precludes the State from re-litigating the issue in the subsequent indictment for aggravated assault.

## STANDARD OF REVIEW

When reviewing a grant or denial of a motion for writ of habeas corpus, appellate courts apply an abuse of discretion standard. *Ex parte Ayers*, 921 S.W.2d 438, 441 (Tex.App.-Houston [1st Dist.] 1996, no pet.); *Ex parte Pipkin*, 935 S.W.2d 213, 215 (Tex.App.-Amarillo 1996, pet. ref'd). The reviewing court accords great deference to the trial court's findings and conclusions and views the evidence in a light most favorable to the ruling. *Ex parte Pipkin*, 935 S.W.2d at 215.

## COGNIZABILITY OF PRETRIAL WRIT OF HABEAS CORPUS

The writ of habeas corpus is an extraordinary writ and neither a trial court nor an appellate court should entertain an application for writ of habeas corpus when there is an adequate remedy by appeal. *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex.Crim. App.2001); *Ex parte Culver*, 932 S.W.2d 207, 210 (Tex.App.-El Paso 1996, pet. ref'd). A defendant may raise by pretrial habeas corpus claims concerning double jeopardy, collateral estoppel, and bail, because if he were not allowed to do so, those protections would be undermined if review were not permitted until after conviction. *Ex parte Culver*, 932 S.W.2d at 210. The applicant must establish his entitlement to habeas corpus relief. *Id.* at 212. The writ of habeas corpus is not available where judicial determination of the question presented, even if resolved in favor of the applicant, would not result in immediate

---

3. The record, of course, does not substantiate this contention. Even assuming the State's representation to be accurate, one must wonder why the first question posed by the trial court was, "Thereafter, you operated a motor vehicle; is that right?" Moreover, the court later stated, "The other allegations *in addition to operating a motor vehicle* and—that he failed to be at his residence within curfew—...—that he did not do community service hours—." [Emphasis added].

4. While the reporter's record does not reveal this conversation, the clerk's record contains the State's form motion to dismiss the motion to revoke probation. The form lists nine reasons the motion is filed. A check mark appears beside the first one:

   <u>X</u>  1. The evidence is insufficient.

release. *Ex parte Ruby*, 403 S.W.2d 129 (Tex.Crim.App.1966); *Headrick v. State*, 988 S.W.2d 226, 228 (Tex.Crim.App.1999).

The State suggests that we must dismiss Appellant's claim because he may not use a pretrial writ and interlocutory appeal to assert a collateral estoppel claim that does not allege a constitutional double-jeopardy violation. The Court of Criminal Appeals has indeed held that a collateral estoppel claim must allege a double jeopardy violation in order to be cognizable on a pretrial writ of habeas corpus. *Headrick*, 988 S.W.2d at 228.

In *Headrick*, the defendant was arrested for driving while intoxicated. *Id.* at 227. She was charged by information for the misdemeanor offense. *Id.* A hearing proceeded before an administrative law judge who concluded that the Department of Public Safety had failed to prove the arresting officer had probable cause to stop the defendant. *Id.* Consequently, Headrick's driver's license was not suspended. *Id.* She filed a motion to suppress the evidence in the DWI prosecution, claiming the State was collaterally estopped from litigating the issues of reasonable suspicion and probable cause due to the conclusions of the administrative law judge. *Id.* The motion was denied. *Id.* She then filed an application for writ of habeas corpus, alleg-

ing the administrative finding of "no probable cause" estopped the State from proving that reasonable suspicion existed to arrest her. *Id.* The Court of Criminal Appeals ultimately determined that Headrick failed to present a double jeopardy question and that she had an adequate remedy at law—to raise her pretrial motion to suppress on direct appeal. *Id.* at 228.

We find *Headrick* distinguishable. We construe Appellant's claim as relying upon the doctrine of collateral estoppel embodied in the double jeopardy clause of the Fifth Amendment. *See Ashe v. Swenson*, 397 U.S. 436, 443–44, 90 S.Ct. 1189, 1194–95, 25 L.Ed.2d 469 (1970). Unlike the prosecution in *Headrick*, the State in this case would have been prevented from pursuing the pending prosecution for aggravated assault if it were prohibited from relitigating the factual issue of whether Appellant was driving a motor vehicle. A finding that Appellant was driving a motor vehicle is necessary to obtain a conviction for the offense of aggravated assault under the indictment.[5] Because conviction would be impossible without the fact that he was driving a motor vehicle, Appellant can establish that he is being unlawfully confined by virtue of the violation of collateral estoppel. *Culver*, 932 S.W.2d at 213. Thus,

---

**5.** As this court discussed in *Ex parte Culver*, the Fourth Circuit in *United States v. Head*, 697 F.2d 1200 (4th Cir.1982), interpreted the holding in *Ashe v. Swenson* as limited to its factual context such that double jeopardy guarantees are not engaged by collateral estoppel which, if applied, would merely restrict proof but not make conviction impossible. *Culver*, 932 S.W.2d at 213. The Fourth Circuit determined that there is no constitutional double jeopardy right at stake where a successful interlocutory appeal from a denial of a collateral estoppel claim "could only lessen and not wholly remove the possibility of conviction." *United States v. Head*, 697 F.2d at 1205. In the instant case, the State argues that Appellant does not assert a double jeop-

ardy claim, but like the applicant in *Headrick*, merely states a claim for the exclusion of evidence by asserting that the State should not be afforded a second opportunity to present evidence that he drove a motor vehicle on the date alleged in the indictment. The State further argues that if it were not permitted to re-litigate this issue, the effect would be to simply limit the proof the State can use in the aggravated assault prosecution, not wholly remove the possibility of conviction. However, it is clear that if collateral estoppel were applied, its effect would be to prevent conviction on the aggravated assault charge because the issue of whether Appellant drove a motor vehicle on the date alleged is essential for conviction.

resolution of the question presented would result in Appellant's immediate release and a writ of habeas corpus is the appropriate vehicle to raise his claim.

## COLLATERAL ESTOPPEL

Having established that Appellant is permitted to bring his claim through a pretrial writ application, we must determine whether he is entitled to relief. Under the doctrine of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d 469. The doctrine must not be applied hypertechnically, but requires that the reviewing court examine the record to determine what issues have been foreclosed between the parties. *Id.; Ex parte Tarver*, 725 S.W.2d 195, 198 (Tex.Crim.App.1986). The reviewing court must inquire first, what facts were necessarily determined in the first proceeding and second, whether the government in the subsequent proceeding has tried to relitigate facts necessarily established against it in the first proceeding. *Culver*, 932 S.W.2d at 212. Facts established in the first proceeding may not be used in the second proceeding either as ultimate or as evidentiary facts. *Id.* This rule applies irrespective of whether the proceeding involved a formal criminal prosecution or a hearing on a motion to revoke. *Tarver*, 725 S.W.2d at 198. However, a decision to overrule a motion to revoke does not in and of itself require application of collateral estoppel because a trial court may decide not to revoke for a variety of reasons unrelated to whether or not the State sufficiently proved its grounds for revocation. *Id.* at 200.

The procedural posture in *Ex parte Tarver* guides our resolution of the issue presented. Tarver was found guilty of possession of cocaine and was granted probation. *Id.* The following year, he was charged with assault and the State filed a motion to revoke his probation based on the allegation that he had violated the terms of his probation by committing the assault. *Id.* A probation revocation hearing ensued and after listening to the evidence offered by the State, the trial judge granted the defense motion to find the allegation "not true," adding, "I find the evidence in this case to be totally incredible." *Tarver*, 725 S.W.2d at 198. The motion to revoke was denied. *Id.* Tarver then sought a pretrial writ of habeas corpus, seeking dismissal of the assault charge because the ruling of the district court at the probation revocation hearing represented a finding that he was not guilty of the charged assault such that the State was barred from prosecuting him for the same offense. *Id.* The *Tarver* court emphasized the narrowness of its decision to the particular circumstances of the case before it: "It is only in the particular circumstances of this case, where the trial court does make a specific finding of fact that the allegation is 'not true,' that a fact has been established so as to bar relitigation of that same fact." *Tarver*, 725 S.W.2d at 200.

Before collateral estoppel is applied, there must be a fact-finding which illustrates the basis for the court's decision. *Wafer v. State*, 58 S.W.3d 138, 141 (Tex.App.-Amarillo 2001, no pet.). Next, we apply the *Ashe v. Swenson* test used in *Tarver*: "Has a fact issue already been determined, adversely to the State, in a valid and final judgment between the same parties? Is the State now trying to relitigate that same fact issue?" *Tarver*, 725 S.W.2d at 199.

Here, the trial judge by written order expressly found that the issue of whether

Appellant was driving a motor vehicle was "litigated" in the probation revocation hearing. This finding nullifies the State's contention that it had abandoned the aggravated assault as a basis for the revocation. More importantly, the judge found that no evidence of the allegation was presented. We turn now to the court's recitation that it had made "no specific finding" on the issue. While the State does not contest that the probation revocation hearing and aggravated assault prosecution involve the same issue—whether the appellant drove a motor vehicle—it argues that the issue was never adjudicated *adversely* to the State through a final judgment at the probation revocation hearing.

We recognize that the facts before us are slightly different from those presented in *Tarver*. There, the trial court found "the evidence in this case to be totally incredible." *Tarver*, 725 S.W.2d at 198. Such a statement indicates there was *some* evidence presented; it was just totally unworthy of belief. The court then made a specific finding of "not true." Here, there was *no* evidence presented and the trial court entered a specific fact finding to that effect. Had the order merely stated that the court made "no specific finding on the issue," we would likely agree with the State. But the specific finding of "no evidence" is tantamount to finding of "not true."

Consequently, we reject the State's argument and interpret the trial court's conclusion that "no evidence of the defendant driving a motor vehicle was presented" as a finding of fact adverse to the State. By presenting "no evidence," the State failed to prove that Appellant drove a motor vehicle. No contrary finding could be made and this is true regardless of whether the State's failure to prove that Appellant was driving a motor vehicle was the basis for the trial court's denial of the motion to revoke. The State had the opportunity to present witnesses at the probation revocation hearing and failed to do so. It is "now trying to relitigate the same fact issue." *Tarver*, 725 S.W.2d at 199. Because Appellant has demonstrated that a fact issue had been determined adversely to the State in a final and valid judgment, the trial court abused its discretion in denying habeas relief. Point of Error No. One is sustained. The judgment of the trial court is reversed and the indictment dismissed.