

# NUMBER 13-10-685-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## EX PARTE GEORGE GARZA III

---

### On appeal from the 105th District Court
### of Kleberg County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Vela, and Perkes
### Memorandum Opinion by Justice Vela

Applicant, George Garza III, appeals from the trial court's order denying the relief he requested in a pretrial application for writ of habeas corpus. In a single issue, he contends article 17.151 of the Texas Code of Criminal Procedure mandates his release from pretrial incarceration. *See* TEX. CODE CRIM. PROC. ANN. art. 17.151 (West Supp. 2010). We affirm.

## I. BACKGROUND

On November 2, 2010, Garza filed a pretrial application for writ of habeas corpus pursuant to article 17.151 of the Texas Code of Criminal Procedure. In his writ application, Garza alleged: (1) he is unlawfully restrained of his liberty by the Kleberg County Sheriff, having been arrested and confined for the offense of capital murder; (2) he is presently confined in the Kleberg County Jail pursuant to a $300,000 bond; (3) he has been continuously detained in jail on this charge since his arrest on August 2, 2010; (4) over ninety days have elapsed since his arrest and confinement; (5) no indictment has been returned in Kleberg County; (6) because no indictment has been returned, the State is not now, and has not been ready for trial, within the time specified by article 17.151; and (7) because of the State's failure to be ready for trial within the specified time period, article 17.151 mandates that (a) he be released on a personal bond or (b) the trial court should reduce the amount of bond to an amount he can post. Two days after Garza filed his writ application, a Kleberg County Grand Jury indicted him for the capital murder of Susan Rousseau. *See* TEX. PENAL CODE ANN. § 19.03 (West 2003).

On December 9, 2010, the trial court conducted a hearing on Garza's pretrial application for writ of habeas corpus. During that hearing, defense counsel argued the State violated article 17.151 by failing to indict Garza within ninety days after the date he was arrested. Thus, defense counsel argued that Garza is "entitled to bond at this time."

The State conceded that Garza's arrest date and the date of his indictment were more than ninety days apart. However, the State argued that article 1, section 11 of the Texas Constitution "also provides that a defendant who is charged with a capital murder

2

where the proof is evident is not entitled to bond . . . ."[1]   The State's attorney advised the court that the evidence "will establish that the Defendant will be convicted should this case go to trial and that the death penalty is likely as well."

No witnesses testified during this hearing; however, the trial court admitted Garza's affidavit into evidence.   The affidavit stated, in relevant part that

> I [George Garza] have been continuously incarcerated in the Kleberg County Jail since August 2, 2010 pursuant to a complaint charging me with Capital Murder.   I have been told that I was indicted for Capital Murder by a Kleberg County Grand Jury on November 4, 2010.
>
> I am indigent and without means of making a bond in any amount.   I own no cash, stocks, bonds, real estate, investment securities, motor vehicle or any other personal property of substantial value.   I have nothing to sell to secure any funds.   I do not have any monies on deposit in any bank.   I am not the beneficiary of any trust.   I do not have any balance in my commissary account at the Kleberg County Jail.   I do not know of any funds that will become available to me within the foreseeable future.   I am married and have two children.   I was gainfully employed with a landscape company before my arrest.
>
> My mother is deceased and my father is unable to provide any financial assistance at this time.
>
> I am unable to pay for a lawyer to assist me in this matter and have been given a court appointed lawyer.
>
> I promise that if released on bond I will appear as required by the Court . . . .

After hearing argument from both sides, the trial court stated:

> The Court finds that this defendant was in custody for more than ninety days at the time that the Indictment was returned by the Grand Jury of Kleberg County.   The Court also finds that the State had the opportunity to take appropriate measures to move for the denial of bail of this defendant as provided by law.   The Court also finds that the State made no, took no action to have this Court deny bail to this defendant in the manner provided by law.   The Court finds that bail

---

[1] *See* TEX. CONST. art. 1, § 11.

was set at $300,000. The Court finds that that is an appropriate amount of bail in this case and will deny the request to reduce bail from that amount. The Defendant has the opportunity to file a subsequent request at a later point in time should he choose to do so. In the meantime, bail will remain at $300,000 . . . .

On December 10, 2010, the trial court signed an order denying the relief requested in the pretrial application for writ of habeas corpus. On December 15, 2010, the trial court signed an order, stating in relevant part, that Garza was indigent. This appeal followed.

## II. DISCUSSION

By a single issue, Garza contends article 17.151 of the Texas Code of Criminal Procedure mandates his release.

## A. Standard of Review

We review a trial court's decision to grant or deny a writ of habeas corpus for an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Jaime v. State*, 81 S.W.3d 920, 925 (Tex. App.—El Paso 2002, pet. ref'd). To prevail on a writ of habeas corpus, the proponent must prove the allegations by a preponderance of the evidence. *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.); *see Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995).

## B. Analysis

Article 17.151 provides, in relevant part:

A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within:

4

> (1) 90 days from the commencement of his detention if he is accused of a
> felony[.]

TEX. CODE CRIM. PROC. ANN. art. 17.151, § 1(1).  Garza argues that under this statute,

"[a]n indigent defendant is entitled to release on a personal recognizance bond" and that

"[i]t is also mandated by court decision."  (citing *Ex parte Rowe*, 853 S.W.2d 581 (Tex.

Crim. App. 1993)).

In *Rowe*, the defendant sought release from pretrial detention based upon article

17.151 because the State failed to indict him within the ninety-day period that followed his

incarceration.  853 S.W.2d 581, 581–82 (Tex. Crim. App. 1993).  The court of criminal

appeals concluded that article 17.151 requires a trial court to reduce a defendant's bail to

an amount the record reflects that he or she can afford, or to release a defendant on

personal bond when the record reflects that he or she cannot make any bond.  *Id.* at 582

& n.1; *see* TEX. CODE CRIM. PROC. ANN. art. 17.151.

A court's discretion in fixing a defendant's bail is governed by article 17.15 of the

Texas Code of Criminal Procedure, which contains rules for fixing the amount of a

defendant's bail.  *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005).  In May

1993, when the court of criminal appeals reached its decision in *Rowe*, article 17.15

allowed but did not require trial courts to consider the future safety of a victim of the

respective alleged offense in fixing the defendant's bail.  *See* Act of May 23, 1985, 69th

Leg., R.S., ch. 588 § 2, 1985 Tex. Gen. Laws 2219 (amended 1993) (current version at

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005)).  At that time, the statute was silent

with respect to whether a trial court could consider community-safety concerns in

determining the question of bail.  After the court of criminal appeals decided *Rowe*, the

Texas Legislature amended article 17.15. The amended version of the statute applicable in Garza's case, places a mandatory duty on courts to consider the future safety of the community in fixing the amount of a defendant's bail. *See* Act of May 22, 1993, 73rd Leg., R.S., ch. 396 § 1, 1993 Tex. Gen. Laws 1694, 1695; *see also* TEX. CODE CRIM. PROC. ANN. art. 17.15 (stating that "[t]he amount of bail to be required in any case is . . . to be governed . . . by the following rules: . . . 5. The future safety of a victim of the alleged offense and the community shall be considered.").

Article 17.15 applies to all bail hearings. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15. "By placing a mandatory duty on trial courts to consider the safety of the victim and the safety of the community in fixing bail in all cases, the Legislature requires trial courts to consider a factor that is not related to the amount the defendant can afford to pay." *Ex parte Matthews*, 327 S.W.3d 884, 887 (Tex. App.—Beaumont 2010, no pet.). In *Matthews*, the court stated:

> We doubt that the Legislature intended to mandate trial courts to release defendants on bail on a personal bond or based solely on the amount they can afford in cases in which the defendant, although unable to pay a significant bail, represents a real threat to his victim or to the community; these are considerations that extend beyond the criteria of article 17.151 § 1 which focuses only upon the defendant's ability to pay.

*Id.* at 887.

The legislative mandate requiring trial courts to consider victim and community safety extends to "any case," which includes a release on bail that is sought based on the State's delay in bringing the defendant to trial. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 17.15. Nevertheless, when an accused "has been incarcerated and there has been a ninety-day period of delay in which the State has not announced ready for trial, the trial

6

court must either release the defendant on a personal bond or allow the defendant to secure his release by setting a bail in some amount." *Matthews*, 327 S.W.3d at 887–88. In fixing the amount of bail in a case to which article 17.151 applies, "trial courts have been authorized to consider victim and community safety concerns in determining the amount of bail that is appropriate to require." *Id.* at 888.

In this case, the trial court could reasonably infer that community-safety concerns existed, which then allowed it to exercise its discretion in fixing Garza's bail at $300,000. Orders setting bail are reviewed on appeal to determine whether the trial court abused its discretion. *See Ex parte Ruiz*, 129 S.W.3d 751, 753 & n.2 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981)).

In determining Garza's bail, the trial court had before it the sworn affidavit[2] of Bradly Lile, a criminal investigator who conducted an investigation of Rousseau's murder. Officer Lile stated that on December 7, 2005, Rousseau's body was discovered in her trailer. She had been "bludgeoned" to death with a baseball bat, and the phone line to her trailer had been "pulled out." At some point after the murder, a "tipster" called the crime stoppers's hotline and stated that Garza "had confided that he had struck a female with a bat in Kingsville" and that "Garza was desperate to leave the area." On August 2, 2010, Garza agreed to an interview with Texas Ranger Pauska and Detective Salinas. During the interview, Garza stated that a woman drove him to a Kingsville trailer park, pointed to a trailer, and told him there was money inside the trailer. After Garza "forcibly pulled open the trailer door," a person inside the trailer struck him with a pipe. Garza

---

[2] This affidavit was filed with the trial court on October 5, 2010 and is included in the appellate record.

7

grabbed the pipe from the person, struck the person with it, and fled the scene.

Officer Lile's affidavit was sufficient to establish that community-safety concerns were implicated by Garza's possible release and that Garza was desperate to leave the area. His affidavit raises a reasonable inference that if Garza was to secure his release, he would be likely to abscond or pose a danger to the community. From this evidence, the trial court could have concluded that Garza would likely disregard conditions of bond were he to gain his release on a personal bond or a bond of less than $300,000.

We conclude that the trial court could have properly considered community-safety concerns in determining the required amount of Garza's bail. In light of the community-safety concerns presented by Garza's release, we conclude that Garza's bail of $300,000 is reasonable. *See Matthews*, 327 S.W.3d at 888 (holding that trial court did not abuse its discretion by setting bail at $475,000 for murder defendant). We overrule the sole issue for review.

### III. CONCLUSION

We affirm the trial court's order.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of August, 2011.

8